**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Case No. 8:12-CR-00045 |
| | ) | |
| | ) | |
| SAMI OSMAKAC, | ) | |
| Defendant. | ) | |

**DECLARATION OF R.J. HOLLEY, ACTING ASSISTANT DIRECTOR,
COUNTERTERRORISM DIVISION, FEDERAL BUREAU OF INVESTIGATION**

I, R.J. Holley, hereby declare and say:

1. I am the Assistant Director of the Counterterrorism Division, Federal Bureau of Investigation ("FBI"), United States Department of Justice, a component of an Executive Department of the United States. I am responsible for, among other things, directing the conduct of FBI counterterrorism investigations. As the Assistant Director, I have official supervision and control over the files and records of the Counterterrorism Division, FBI, Washington, DC.

2. The matters stated herein are based on my personal knowledge, my review and consideration of documents and information available to me in my official capacity, and information furnished by Special Agents, other employees of the FBI and employees of the Department of Justice. My conclusions have been reached in accordance therewith.

3. I am submitting this declaration in support of the Government's Motion for a Protective Order Pertaining to the Testimony of the Undercover Agent at Trial. I am advised that the Government's motion requests the Court to put measures in place while the FBI undercover employee (UCE) testifies, in order to prevent the disclosure of the UCE's true

1

identity and to limit the disclosure of the UCE's physical appearance. I understand that the Government seeks narrowly tailored security measures in order to (1) prevent the compromise of several national security investigations in which the UCE has been or is currently involved; (2) ensure that the UCE may be used in future investigations, which could prevent future terrorist attacks; and (3) serve to protect the safety of the UCE and the UCE's family from potential threats or terrorist attacks by individuals sympathetic to terrorist organizations.

4. Specifically, I understand that the Government seeks to (1) allow the UCE to testify under a pseudonym, (2) prohibit the defense from asking the UCE questions that reveal personally identifiable information or could lead to the UCE's identity, (3) allow the UCE to wear a light disguise, (4) allow the UCE to use non-public entrances and exits to the courthouse and courtroom, (5) have the UCE testify in a courtroom with only essential personnel while the public and press observe from a second courtroom via Closed Circuit Television (CCTV) that does not show the UCE, (6) allow that any videos that are shown to the public or press via CCTV that depict the UCE have the face of the UCE obscured or pixilated, (7) prohibit all non-official recording and photographic devices from the courtroom in which the UCE testifies as well as the courtroom in which the CCTV feed is shown during the UCE's testimony, and (8) prohibit all disclosure of any audio or video recording of the UCE's testimony.

## I.    THE FBI'S UNDERCOVER PROGRAM

5. The use of the undercover technique is an important tool in the detection, prevention, and prosecution of numerous investigations that are central to the FBI's national security and law enforcement missions. The services rendered by FBI UCEs provide important information that the United States Government needs to serve these missions, often at great danger to the UCE's personal safety, as well as the personal safety of the UCE's family.

2

6.  The successful use of the undercover technique in FBI investigations is dependent upon a small group of personnel who are trained and certified as UCEs.  The FBI expends substantial financial resources and effort to select, train, and protect its UCEs.  The certification process is rigorous and multi-tiered, thus emphasizing the need to select only those individuals who can perform safely and effectively in an undercover capacity.  UCEs are highly valuable and non-fungible assets; therefore the FBI goes to great lengths to protect their true identities due to significant, legitimate fears of retaliation against each UCE or that UCE's family.

7.  Thus, the FBI has an extremely substantial interest in the integrity of its undercover program and perhaps more importantly in the personal safety of the UCEs and their families.  The program could be seriously prejudiced by requiring the UCE to testify in any manner that could reveal the UCE's true identity.

## II.    CONSEQUENCES OF FAILING TO PUT PROTECTIVE MEASURES IN PLACE

8.  For the reasons described below, failure to put in place the requested protective measures could reasonably compromise several national security investigations involving the UCE, could prevent the UCE from future participation in undercover roles, and perhaps most importantly could put the UCE and the UCE's family in jeopardy of physical harm.  If the identity of the UCE is revealed and concomitantly the UCE's position as an FBI UCE, then any investigation involving the UCE could be compromised.  A terrorist organization could use a UCE's true identity to obtain pictures of the UCE either from the internet or by using the identity to locate and photograph the UCE.  Using the internet, the terrorist organization could widely circulate the picture of the UCE to its operatives.  The FBI has concerns that in such a scenario, the UCE and the UCE's family could be threatened, harmed, or killed in an effort to thwart the investigation, retaliate against the UCE, or dissuade other FBI personnel from participation in the

undercover program. In addition, if the true identity and physical characteristics or appearance are revealed, then the UCE will not be able to participate in any future investigation, as the UCE will no longer be able to act in an "undercover" role. Since the UCE involved with this investigation has very unique abilities and skills, the consequences of the UCE's inability to participate in future investigations cannot be underestimated. The FBI would be left without an important resource to fulfill its mission. Finally, and perhaps most importantly, if the UCE's true identity is disclosed then the UCE's physical safety and that of the UCE's family will be put in significant jeopardy.

9. These conclusions are not idle speculation. The concern regarding the UCE's vulnerability of being targeted for harm and exposure has been heightened considerably by the increasing availability of personal information on the internet. Indeed, several web sites exist which encourage the posting and dissemination of the identities and personal information about law enforcement undercover agents/officers. With the simple click of a mouse, personally-identifying information about or a photograph of a UCE – like the valuable law enforcement officer in this case – can be transmitted instantly to adversaries. The Justice Department and other law enforcement agencies have argued that the dissemination of such information on the internet not only compromises pending or future investigations, but also places undercover agents in potentially grave danger. That is certainly the case here; the vulnerability of the UCE and the UCE's family to personal attack is substantially greater if the UCE's true identity and physical characteristic are disclosed.

10. Accordingly, and consistent with my responsibilities, I am submitting this declaration to support the Government's request that this Court order certain security measures to protect against the disclosure of the true identity and physical characteristics of the UCE.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August ＺＩ , 2013

_R J Holley_

R.J. Holley
Acting Assistant Director
Counterterrorism Division
Federal Bureau of Investigation