**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES AMERICA,**

      **v.**                                              **Case No.: 8:12-cr-45-T-35-AEP**

**SAMI OSMAKAC**

_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Government's Motion for Protective Order Pertaining to the Testimony of Undercover Agent at Trial ("Motion for Protective Order) (Dkt. 140), Defendant's Objections to Motion for Protective Order (Dkt. 146), Government's Reply to Defendant's Objections to the Government's Motion for Protective Order (Dkt. 152), Memorandum of Law in Support of the Tampa Tribune's Motion to Intervene (Dkt. 160), Government's Reply to Tribune's Opposition to the Government's Motion for Protective Order. (163)  Upon consideration of the foregoing, the arguments set forth at the hearing held before the Undersigned on September 30, 2013, all other relevant filings, case law, and being otherwise fully advised, the Court **GRANTS in part and DENIES in part** the Government's Motion for Protective Order (Dkt. 140), as described herein.

The Government seeks certain protections for the undercover employee's ("UCE's") identity during his/her testimony in this case.  The security measures sought are as follows:

1. The UCE may use the UCE's undercover pseudonym when testifying at trial, without disclosing publicly the true identity of the UCE.

2. The defense shall be prohibited from asking any questions seeking personal identifying information, such as name and address, from the UCE.

3. The UCE may testify using a light disguise, such as changing the UCE's facial hair, hairstyle, or dress style.

4. The UCE shall be permitted to use a non-public entrance/exit to the courthouse and the courtroom.

5. When the UCE testifies, only the Court, essential personnel, the jury, the defendant and his counsel, and the Government's trial team shall be present in the courtroom. The Government shall provide a contemporaneous CCTV video or similar broadcast of the UCE's testimony, without the visual image of the UCE, while the UCE is testifying, which shall be made available for public viewing in another location in the courthouse.

6. The Government shall be allowed to digitally obscure the facial image of the UCE on any recorded video footage played over the CCTV feed during court proceedings (no such measures are required for any video shown or offered by the Government as an exhibit at trial and viewed by the Court, essential personnel, the jury, the defendant and his counsel, and the government's trial team).

7. All non-official recording devices shall be prohibited from being in the room in which the CCTV feed is shown during the UCE's testimony.

8. No public disclosure of any audio and/or video recording of the UCE while testifying shall be permitted.

(Dkt. 140 at 6-7)  The Government argues that the "proposed security measures are

2

narrowly tailored to assure that the identity and security of the UCE and the integrity of other undercover investigations will not be compromised by the UCE's appearance, without impairing Defendant's confrontation rights under the Sixth Amendment, and without closing the proceedings to the public." (Id. at 6)

Defendant does not object to the security measures numbered 1, 3, 4, 6, 7, and 8. With respect to security measure number 2, Defendant does not object to being prohibited from asking questions seeking the UCE's name, address, or social security number.   However, Defendant does seek to cross-examine the UCE about his prior work activity, prior undercover activity, education, and training.   Defendant asserts that this information is necessary for the jury to evaluate the credibility of the witness.

Further, Defendant does object to security measure number 5 involving the closing of the courtroom to the public because Defendant contends that the closure of the courtroom would unduly prejudice Defendant in the eyes of the jury and bolster the perceived importance of the witness in the minds of the jury.   However, as an alternative, Defendant requests that Defendant's family be allowed to remain in the courtroom during the testimony of the UCE.

Additionally, the Tampa Media Group, Inc., owner of the Tampa Tribune (hereinafter, the "Tribune") objects to the proposed closure of the courtroom during the UCE's testimony.   The Tribune contends that the Government's interest to protect the identity and security of the UCE could be protected with other less restrictive measures and that the closure of the courtroom is broader than necessary to accommodate the Government's interest.

The Tribune also requests access to judicial records, including videos introduced

3

in evidence, which may be released with obscured imagining and/or voice distortion in order to protect the identity of the UCE. The Government does not object to the Tribune's request to have access to the videos of the meetings between Defendant and the UCE in which the UCE's face is obscured, or to having the pixelated videos generally available to the public once the videos are admitted at trial.

The Court has explored the options presented by the parties in their pleadings and during the hearing, and other available options to find reasonable measures to protect the identity of the UCE while balancing the Defendant's right to a fair trial and the public's right to know. After careful consideration of the competing interests and the available means for protecting those interests, principally to ensure the Defendant receives a fair trial, the Court **ORDERS** as follows:

1. The Government's Motion for Protective Order Pertaining to the Testimony of Undercover Agent at Trial (Dkt. 140) is **GRANTED in part and DENIED in part.**

2. The proceedings will be held in **Courtroom 10B** rather than Courtroom 17A.

3. The following security measures shall be implemented:

   a. The UCE may use the UCE's undercover pseudonym when testifying at trial, without disclosing publicly the true identity of the UCE.

   b. By agreement of the parties, the defense shall be prohibited from asking any questions seeking the UCE's name, address, or social security number. The Court **defers** ruling on the issue of the extent to which Defendant can cross-examine the UCE about his prior work activity, prior undercover activity, education, and training until the Court

hears from the parties at the Status Conference scheduled for February 21, 2014. In this regard, the parties shall be prepared to articulate *precisely* what will be asked and *precisely* what the Government seeks to preclude the Defendant from asking, for example, whether the Defendant seeks to elicit the number of prior undercover operations or the details of prior undercover investigations.

c. The UCE may testify using a light disguise, such as changing the UCE's facial hair, hairstyle, or dress style. The disguise, however, shall fairly represent the UCE's approximate age and shall not obscure the UCE's face to the extent that a person would not be able to assess the UCE's demeanor.

d. The UCE shall be permitted to use a non-public entrance/exit to the courthouse and the courtroom. The UCE will enter and exit the courtroom outside the presence of the public.

e. The courtroom shall remain open during the testimony of the UCE. However, the UCE will testify behind a screen and only the Court and its essential security cleared personnel, the jury, the Defendant and his trial team counsel, and the Government's trial team shall be able to view the UCE. **NO ONE OTHER THAN THE QUESTIONING AND DEFENDING LAWYER AND COURT SECURITY OFFICERS WILL BE ALLOWED TO STAND DURING THE UCE'S TESTIMONY.** Attached to this Order are two photographs approximately depicting the courtroom arrangement that will be used during the UCE's

testimony. Though not pictured in the photograph, the Court will arrange for the prosecution to have a counsel table in the space typically occupied by the witness stand in courtroom 10B, such that it will be perpendicular to the defense table and across from and facing the jury. The podium for the questioning lawyer will be placed between counsels' tables along with the presentation cart. (Contrary to the picture, the podium would be moved farther to the right and closer to the defense table so as not to obscure the prosecution's view of the witness.) Also, the defense team will have their chairs turned facing the gallery, so that they will have a better vantage point from which to view the witness. As positioned, the screen blocks all gallery observers from viewing the witness, who, as noted, will enter and exit the courtroom when it is closed to all but Court security cleared personnel and both trial teams and the Defendant.

f. Any unaltered video recorded footage admitted as evidence and presented during the trial that includes the unobscured face of the UCE shall only be viewed by the Court and its security cleared personnel, the jury, the Defendant and the Defendant's trial team, and the Government's trial team. Such video recorded footage shall not be visible to the public. The Government has advised that it can adequately synchronize a pixelated version of the video feed during the testimony. As such, a pixelated version will be played simultaneously on the display screen in the courtroom so that it can, to

some extent, be viewed by the public. Unfortunately, the witness screen as positioned will likely obscure the view of the display screen at certain positions (especially those on the north side of the courtroom sitting closest to the screen).   If additional jury display carts are available, the Court will attempt to accommodate those viewers.   In any event, the public, including the media, will be allowed to hear any audio recorded with the video footage.   Further, the Government has agreed to provide access to the Tribune of the pixelated version of any video recorded footage of the UCE admitted into evidence during the trial.   It would appear that the Government does not oppose the republication by the media of the pixelated version of the video, which obscures the UCE's face**.  If that is not the case, the Government and/or the Defendant shall be prepared to address this issue at the status conference.**

g. No recording devices shall be allowed in the courtroom, except for the devices used by the official security cleared court reporter.

h. Because there will be no recording made of the UCE during testimony, no public disclosure of such non-existent audio and/or video recording shall be permitted. The Government advises that it will make the transcript of the UCE's testimony available for the media and the public.  That accommodation will require daily copy of that portion of the trial to be ordered and paid for by the Government.  To that end, the Government shall contact the official security cleared court

reporter, Claudia Spangler-Fry, to make appropriate logistical and financial arrangements.

i.  Finally, because of the accommodations that will be required for this witness, the Government shall call the UCE as its first witness or call the UCE on the first day of the second week of trial. This is necessary to allow the Court's IT personnel to adjust the courtroom to facilitate the Government's requested accommodations. **The Government shall advise the Court at the status conference which of these two alternatives it selects.**

**DONE** and **ORDERED** in Tampa, Florida, this 12th day of February 2014.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record
All *Pro Se* parties