UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.:  8:12-CR-45-T-35AEP

SAMI OSMAKAC

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
IN LIMINE, OR IN THE ALTERNATIVE FOR A DAUBERT HEARING,
REGARDING THE TESTIMONY OF EVAN KOHLMANN**

The United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to the defendant's Motion in Limine, or in the alternative for a Daubert Hearing, Regarding the Testimony of Evan Kohlmann.  Dkt. No. 228.  Specifically, the defendant, Sami Osmakac, objects to Kohlmann's proposed testimony under the Federal Rules of Evidence and requests a Daubert hearing regarding Kohlmann's proposed testimony.  Id. at 5, ¶14 & 7, ¶18.

As set forth herein, the proposed testimony of Kohlmann is permissible expert testimony under Fed. R. Evid. 702.  As such, this Court should deny the defendant's Motion in Limine.  Additionally, the government has no objection to a Daubert hearing in this matter to establish Kohlmann's qualifications and the reliability and helpfulness of his proposed testimony prior to the trial in this matter.[1]

---

[1] The government requests that such hearing not be scheduled for April 4 or 7, 2014, as Kohlmann is unavailable on those dates.

## BACKGROUND

On September 26, 2013, the government provided the defendant with initial notice of its intent to call Kohlmann to provide testimony on various topics discussed by the defendant in recorded conversations. At that time, these topics included Inspire Magazine and the meanings of various terms and phrases used by the defendant in the context of Islamic extremism. The government further provided the defendant with Kohlmann's curriculum vitae ("CV") on this date. On February 20, 2014, the government disclosed to the defendant the expert report of Kohlmann, which contained a fuller analysis of some of the evidence in this case provided to Kohlmann by the government. Dkt. No. 228-1.

## ARGUMENT

The defendant objects to Kohlmann's proposed testimony on a number of grounds, including that it is speculative, that Kohlmann lacks expertise in some areas, specifically computer analysis, that Kohlmann's testimony will not be helpful to the jury, and on the basis of several Federal Rules of Evidence. However, Kohlmann's proposed testimony meets all the requirements of Fed. R. Evid. 702 and the relevant case law, including that it will be highly useful to the jury to enable them to understand the references and admissions that the defendant makes in various recorded conversations. Further, Kohlmann's proposed testimony will also greatly

assist the jury in understanding the evidence relevant to the defendant's predisposition to commit this crime, if an entrapment defense is properly asserted.[2]

### *I. Legal Standards*

Federal Rule of Evidence 702 is the "starting point" for an analysis of the admissibility of expert testimony and the reliability of an expert opinion. United States v. Frazier, 387 F.3d 1244, 1258-59 (11th Cir. 2004). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To implement Rule 702, the Supreme Court requires the district court to perform the critical "gatekeeping" function concerning the admissibility of evidence and testimony derived from an expert's specialized knowledge. Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 n.7 (1993); Kumho Tire Co. Lt. v. Carmichael, 526 U.S. 137, 147 (1999). Accordingly, the trial court must conduct an "exacting analysis" of the foundations of expert testimony to ensure they meet the standards for admissibility under Rule 702. Frazier, 387 F.3d at 1260.

---

[2] The defendant's predisposition will become relevant only once the defendant has met his burden of showing improper government inducement. See United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995). Once the defendant raises an entrapment defense, the government may introduce propensity evidence to show the defendant's predisposition. United States v. Duran, 596 F.3d 1283, 1298-99 (11th Cir. 2010).

The Court should conduct a "rigorous three-part inquiry" to determine the admissibility of expert testimony. As the Frazier Court explained, the trial court must consider whether:

1) the expert is qualified to testify competently regarding the matters he intends to address;

2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and

3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id.

The burden of establishing these three basic requirements falls upon the proponent of the expert testimony, in this instance, the government. Id. Consistent with this burden, the government has provided the defendant with a written report and Kohlmann's CV that describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Fed. R. Crim. P. 16(b)(1)(C).

### *A. Qualification*

Experts may be qualified in various ways, including by knowledge, skill, experience, training, or education. Frazier, 387 F.3d at 1260-61 (citing Fed. R. Evid. 702). Of course, "one may be considered an expert but still offer unreliable testimony," meaning that the reliability of a specific opinion of a qualified expert "remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261 (quotation omitted).

### B. Reliability

The proposed expert testimony must be supported by proper validation, so-called "good grounds, based on what is known." Id. (citing Daubert, 509 U.S. at 590). The key inquiry of reliability is "whether the reasoning or methodology underlying the testimony is scientifically valid . . . and whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. The same criteria is applicable in cases where technical or other specialized knowledge, as opposed to scientific knowledge, is at issue. Kumho Tire, 526 U.S. at 149. Although the factors that the court uses to analyze the reliability of a proposed expert's testimony may vary from case to case, in part depending on the nature of the expertise at issue, id. at 150-51, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Frazier, 387 F.3d at 1262 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends)).

### C. Helpfulness/Relevance

As set forth above, under Rule 702, expert testimony may be admitted if it will "assist the trier of fact." As the Supreme Court explained in Daubert, this criteria of "goes primarily to relevance" of the proposed testimony. 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful."). Additionally, this factor requires that the expert testimony at issue encompass matters that are "beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262.

5

Moreover, otherwise admissible expert testimony may still be excluded under Fed. R. Evid. 403 if the probative value of otherwise admissible evidence is substantially outweighed by unfair prejudice or the potential to confuse or mislead the jury. Frazier, 387 F.3d at 1263.

## II. *Kohlmann's proposed testimony meets all of the requirements of Daubert and Fed. R. Evid. 702.*

The proposed testimony of Kohlmann in this case meets each of the factors articulated above. First, as to his qualifications to testify to issues related to Islamic extremism and terrorism, district courts that have considered his expertise have routinely found him qualified to provide testimony, and these decisions have also been upheld when they were appealed. See, e.g., United States v. Hassan, 742 F.3d 104, 130-31 (4th Cir. Feb. 4, 2014); United States v. Kaziu, 2014 WL 961065, *4 (2d Cir. Mar. 13, 2014) ("[A] lay witness could not have attested to the same issues as Kohlmann, who based his testimony on specialized research and training removed from the instant case."); United States v. Mohamud, 2013 WL 71806, *6 (D. Or. Jan. 4, 2013) ("I find that all three terrorism experts [including Kohlmann] can provide insight into the terrorism community that would assist the jury.").[3]

Further, Kohlmann's testimony is reliable as it is based on extensive specialized knowledge and research. Kohlmann can further testify to the nature of his analysis and its reliability at a Daubert hearing on this matter.

---

[3] Kohlmann's testimony in Mohamud was on issues similar to those in this case and was admitted following an extensive Daubert hearing.

Finally, Kohlmann's testimony will be extremely helpful to the jury. In some instances, Kohlmann's testimony will assist the jury by making the defendant's comments and admissions understandable to the jury. For instance, in his martyrdom video, as well as in other recorded conversations, the defendant refers in laudatory terms to "Abu Adam and Abu Ibraheem," two German nationals who have participated in jihad activities with a terrorist group related to Al-Qaeda. Dkt. No. 228-1 at 29-32. The jury would have no way of knowing who these individuals were, nor why the defendant was hailing them, without such testimony, and yet, the defendant's clear admiration of these individuals is highly relevant to his intent in carrying out the charged acts.

Further, the defendant's discussion of Inspire would be similarly opaque to jurors without testimony regarding the nature of Inspire magazine, why the defendant might try to speak in coded language regarding it, and the import of the articles reviewed by the defendant. Dkt. No. 228-1 at 28-29. These are just two examples of the explanatory testimony that the government proposes that Kohlmann be allowed to provide based on his expert report; further examples will be detailed at the Daubert hearing in this matter.[4]

The defendant complains that Kohlmann's testimony regarding such issues will be filled with speculation, as he believes that in many instances, there is no proof

---

[4] Further examples include, but are not limited to: the defendant's references to "big hijjrah" as code for a violent attack, Dkt. 228-1 at 7; the "underwear bomber," id. at 8; the identity of prisoners the defendant sought to free, id. at 9; other elements of the defendant's martyrdom video, id. at 11; various elements of the defendant's understanding of Muslim ideology, particularly his adherence to salafi-jihad concepts, id. at 11-22; the defendant's use of operational security and covert communications, id. at 22-24; the defendant's subscription to the principles of Anwar Al-Awlaki, id. at 13-15 and 25-27; and the import of the defendant's viewings of and references to various sites containing extremist propaganda, id. at 32-36.

that the defendant knew such background information. However, in many instances, the defendant's statements make clear that he has reviewed certain information, enabling Kohlmann to draw the conclusion that the defendant does in fact know much if not all of the background information to which Kohlmann will testify. Further, even in instances where the defendant's own statements or the government's evidence cannot prove conclusively that the defendant is aware of such background information, such evidence is still relevant to the defendant's intent, and the defendant may seek to present via cross-examination the possibility that he was unaware of the background of the individuals he admired. See United States v. Augustin, 661 F.3d 1105, 1126 (11th Cir. 2011) ("The explanation of Jeff Fort's [the leader of a criminal enterprise] significance became relevant upon the admission of the recording of Batiste's [the defendant] first meeting with Assaad [the confidential source], during which Batiste likened himself to Fort.").

Another use of Kohlmann' testimony is to show the defendant's intent and predisposition to commit the charged crime based on Kohlmann's analysis of the factors contributing to a person becoming a homegrown violent extremist and the application of those factors to the defendant. The government will not ask Mr. Kohlmann to testify to his ultimate conclusion that the defendant is in fact a homegrown violent extremist, because to do so would arguably violate Fed. R. Evid. 704, by asking Kohlmann to substitute his opinion on the defendant's predisposition to commit the charged acts for the jury's. See, e.g., Mohamud, 2013 WL 71806, *6. However, testimony of Kohlmann's factors that determine who may become a violent

extremist should be admitted, "leaving unstated the inference that the defendant, having been caught engaging in more or less the same practices, also possessed the requisite intent." United States v. Combs, 369 F.3d 925, 940 (6th Cir. 2004); see also Augustin, 661 F.3d at 1123 ("But this prohibition [in Fed. R. Evid. 704(b)] does not require the exclusion of expert testimony that supports an obvious inference with respect to the defendant's state of mind if that testimony does not actually state an opinion on this ultimate issue, and instead leaves this inference for the jury to draw.").

Thus, Kohlmann's proposed testimony meets the requirements of Fed. R. Evid. 702 and the applicable case law.

### *III. Kohlmann's proposed testimony is not otherwise inadmissible.*

The defendant cites a number of other Federal Rules of Evidence which he claims Kohlmann's proposed testimony would violate. In reality, Kohlmann's testimony comports with each of these rules.

The defendant contends that Kohlmann's testimony will violate Fed. R. Evid. 404(b), i.e., its prohibition on the introduction of evidence to show the defendant's actions in conformity therewith. As noted above, in most instances, Kohlmann's testimony relates to the defendant's statements in consensual recordings made as part of this investigation; thus, these recordings, and the defendant's statements thereon, are part of the offense conduct at issue and demonstrate the defendant's intent in committing the charged acts. Further, even if such evidence would fall under Rule 404(b), once the defendant has met his initial burden with respect to an

entrapment defense, the government will be entitled to introduce evidence of his predisposition, including evidence that admittedly is tendered to show the defendant's propensity to act in a certain way. See note 2, supra.[5]

The defendant contends that Kohlmann's testimony should be excluded under Fed. R. Evid. 403. However, the statements at issue here are highly relevant to the defendant's intent and his predisposition. See, e.g., United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006). Further, such testimony will not mislead the jury but rather will help them to understand and fairly evaluate the evidence in the case.

The defendant also cites to Fed. R. Evid. 801-807, the rules governing the admission of hearsay evidence. While the defendant does not detail exactly what he finds objectionable about Kohlmann's proposed testimony under these rules, the government notes that experts are allowed to testify to hearsay regarding matters upon which experts of their field would reasonably rely. Fed. R. Evid. 703. Thus, the admission of Kohlmann's proposed testimony does not violate the rules prohibiting the admission of hearsay evidence.

Finally, the defendant complains that Kohlmann relies on computer analysis he conducted. The government will not rely on Kohlmann at trial to testify to the contents of the hard drive of a computer taken from the defendant's residence.[6]

---

[5] Government also believes that any such evidence would be admissible under 404(b) as evidence of the defendant's intent, motive, plan, and lack of accident, see Dkt. No. 224 at 6-9, but the Court need not consider that issue if it finds the evidence to be part of the charged conduct in this case.

[6] The computer was obtained pursuant to the consent of the defendant's father; its hard drive was imaged, and then the computer was returned to the defendant's family.

Instead, subject matter experts from the Federal Bureau of Investigation will testify to the contents of the computer hard drive. Further, even if Kohlmann were called on to provide such evidence, his experience in examining hard drives, particularly for the types of records at issue here, would qualify him as an expert in such analysis as well.

## CONCLUSION

For the reasons set forth herein, the government respectfully requests that this Court deny the defendant's Motion in Limine to preclude the government from presenting the proposed testimony of Evan Kohlmann, Dkt. No. 228.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:   *s/Sara C. Sweeney*
SARA C. SWEENEY
Assistant United States Attorney
United States Attorney No. 0000119
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6178
E-mail:  sara.sweeney@usdoj.gov

U.S. v. Osmakac                                Case No. 8:12-CR-45-T-35AEP

## CERTIFICATE OF SERVICE

I hereby certify that March 27, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

George E. Tragos, Esq.

                                   By:     */s/ Sara C. Sweeney*
                                                         SARA C. SWEENEY
                                                         Assistant United States Attorney
                                                         USA No. 119
                                                         400 North Tampa Street, Suite 3200
                                                         Tampa, Florida 33602
                                                         Telephone:    (813) 274-6000
                                                         Facsimile:      (813) 274-6178
                                                         E-Mail: sara.sweeney@usdoj.gov